**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**PATRICIA COLWELL,**

**Plaintiff,**

      v.                                                                          Case No. 1:19-cv-1424-TPK

**COMMISSIONER OF SOCIAL**                          **OPINION AND ORDER**
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

      Plaintiff Patricia Colwell filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on August 28, 2019, denied Ms. Colwell's applications for disability insurance benefits and supplemental security income. Ms. Colwell has now moved for judgment on the pleadings (Doc. 9), and the Commissioner has filed a similar motion (Doc. 13). For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the entry of judgment in favor of the Defendant.

### I. BACKGROUND

      On July 18, 2016, Plaintiff protectively filed her applications for benefits, alleging that she had been disabled since August 1, 2011. After initial administrative denials of her claim, Plaintiff appeared at an administrative hearing held on September 5, 2018. Both Plaintiff and a vocational expert, Martin A. Kranitz, testified at that hearing.

      The Administrative Law Judge issued an unfavorable decision on November 20, 2018. She first concluded that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013 and that she had not engaged in substantial gainful activity since her alleged onset date. Next, the ALJ found that Plaintiff suffered from severe impairments including depression, anxiety, obsessive-compulsive disorder, borderline eating disorder, post traumatic stress disorder, chronic obstructive pulmonary disease, asthma, and overactive bladder. She further determined that these impairments, viewed singly or in combination, were not of the severity necessary to qualify for disability under the Listing of Impairments.

      Moving on to the next step of the inquiry, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of sedentary work. She could not climb ladders, ropes, or scaffolds, work at unprotected heights, or work in close proximity to dangerous

machinery. Additionally, she could have no more than incidental contact with the public and no more than simple, short interactions with supervisors and coworkers. Although she could work in proximity with others, she could not work in conjunction with others and any tasks should involve working with objects rather than people. She could do simple, routine tasks in a work environment free of fast-paced production requirements and could make only simple, work-related decisions. She could not tolerate more than a few workplace changes nor concentrated exposure to respiratory irritants. Finally, she needed ready access to a restroom although her need to use it would be accommodated by the normal workday breaks. All of these restrictions precluded Plaintiff from performing her past work as a home health provider, receptionist, and housekeeper.

According to the testimony of the vocational expert, a person with Plaintiff's residual functional capacity, although she could not do Plaintiff's past jobs, could work at the sedentary exertional level as an assembler, an inspector, and a bench worker. The expert also testified as to the numbers of such jobs which existed in the national economy. The ALJ accepted this testimony and therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in her motion for judgment, asserts that the ALJ erred in three ways. She contends that the ALJ erred by relying on the opinion of state agency reviewer Dr. Walker; by giving partial weight to the opinion of the consultative psychological examiner, Dr. Slowik; and by improperly assessing or accounting for Plaintiff's limitations in the areas of work pace and attendance. For all of these reasons, Plaintiff concludes that the ALJ's decision is not supported by substantial evidence.

## II.  THE KEY EVIDENCE

Plaintiff was the first witness at the administrative hearing. She was thirty-four years old at that time and said that she had stopped going to school in the tenth grade but later obtained her GED. She had worked briefly, years ago, as a home health aide, a housekeeper, and a receptionist.

The first health condition to which Plaintiff testified was an eating disorder. She said that her weight fluctuated between 90 and 105 pounds and that she was constantly fatigued. Her medicine also made her tired. Plaintiff also testified that she suffered from depression, OCD, anxiety, and PTSD. These disorders made her want to isolate and also caused her to cry and shake as well as to have panic attacks. It also bothered her to see other people with their children. Physically, she said that she had hepatitis C, which caused her to be sick to her stomach and to throw up. The medication she took also caused dizziness on a daily basis. She reacted to her anxiety by cleaning constantly.

Plaintiff said that she had issues being around people and that she did not manage stress well. Being under stress caused pressured speech and hysterical crying. Her anxiety affected her

sleep and she took medication to help with that problem. She also had a very short attention span.

The vocational expert, Mr. Kranitz, classified Plaintiff's past relevant work as either medium, light, or sedentary according to the DOT. He said that a person restricted to light or sedentary work with a number of restrictions, as described by the ALJ, could work as a housekeeper at the light exertional level. The person could also be an assembler or a sorter if he or she could do light work, and could perform sedentary jobs like assembler, inspector, or bench worker. Someone who needed to work in isolation with only occasional supervision could not do those jobs, however, nor could someone who would miss two days of work per month or who could not make simple decisions up to one-third of the day.

A brief survey of the pertinent medical evidence, which is set forth in great detail in both parties' briefing, shows the following. In 2012, Plaintiff spent almost a month in the hospital being treated for marijuana addiction. She had undergone drug treatment in the past as well, and Family Services had recently removed her children from her home. The discharge summary indicted a diagnosis of anxiety and also stated that Plaintiff had been treated for depression in the past. She was discharged into outpatient therapy at a women's residence. Other notes relating to her ongoing substance abuse disorder show that in 2016, she was again receiving treatment for cannabis use disorder, and that she was discharged from a treatment program in September of that year due to non-attendance and non-compliance. She resumed substance abuse treatment in 2017.

During the same time period, Plaintiff received intermittent treatment for her mental health issues. Many of the notes from 2014 indicate an absence of problems with memory or concentration and also carry a diagnosis of PTSD. They are also replete with information about Plaintiff's unstable family situation, which included having been in an abusive relationship, the fact that her husband had been incarcerated, her efforts to regain custody of her children, and the fact that she was living with her mother and sister, both of whom had mental health issues and abused alcohol. Additionally, treatment notes show that at various times her mood and affect were appropriate and that her depression had improved. For most of 2014, she was actively looking for work. By October of that year, she reported that she had found a job. For the balance of that year, she attended sessions sporadically or not at all, leading to her termination from the program in December. She resumed with counseling in February of 2015, when she reported she was having a hard time finding a job because of her neglect charges. By April, she had been diagnosed with a major depressive disorder. However, she did not attend her counseling sessions for several months and there was some indication of resumption of substance abuse. She was also waiting for a background check to be completed for a job at K-Mart. Later in 2015, she was described as having logical, linear, and directed thought processes, good judgment and insight, and intact memory without attention deficits. She was again discharged from treatment in September, 2015, after not having been seen for two months. Counseling resumed in April of 2016, at a time when she had again relapsed into substance abuse and had not taken her medication for months. Notes from later in 2016 and from 2017 again show poor follow-through

with services and a struggle with impulsive behavior. They also characterize her as having "significant anxiety and issues related to substance dependence." (*E.g.* Tr. 559).

In 2016, Plaintiff presented at the Guthrie Clinic for treatment of urinary frequency, abdominal pain, anxiety, eating disorder, shortness of breath, and sleep issues. Her symptoms included insomnia, depressed mood, feelings of worthlessness and guilt, hopelessness, fatigue, impaired memory, difficulty concentrating, weight loss, psychomotor retardation, and suicidal thoughts. The assessment, done by Dr. Ho, included depression, OCD, and PTSD. The treatment plan contained in those notes was for Plaintiff to return to the clinic or go to the emergency room if her symptoms worsened or failed to improve.

Plaintiff underwent a consultative psychiatric examination on September 26, 2016, conducted by Dr. Slowik, a psychologist. She was living with her mother at that time and not working, although she had attempted to do factory work in 2015 but quit after one day. She said she had been hospitalized in 2011 for a nervous breakdown and that she suffered from chronic asthma. Her appetite was normal but she was constantly angry and periodically depressed. She also reported issues with concentration and memory. At the examination, Plaintiff appeared coherent and goal-directed and had a full and appropriate affect. Her mood was irritable, however. Her concentration and attention were intact, but Dr. Slowik thought her memory skills were moderately to markedly impaired due to her long history of substance abuse. Nevertheless, she had no impairment in the area of following and understanding simple directions and maintaining concentration and attention, but she was moderately to markedly limited in her ability to maintain a regular schedule, to relate to others, or to deal with work stress. According to Dr. Slowik, Plaintiff's mental impairments could "significantly interfere with [her] ability to function on a daily basis." (Tr. 379-84). An internal medicine evaluation done the same day showed only a need to avoid dust, fumes, and other known lung irritants and "mild schedule disruptions due to overactive bladder." (Tr. 386-89). State agency reviewer C. Walker concluded that Plaintiff had a number of moderate mental limitations including the need to be given only simple instructions and to do simple tasks, and that she could tolerate brief and superficial contact with coworkers and the public as well as minor changes in an ordinary work setting. (Tr. 111-14).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings

of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

### A.  The Opinions of Drs. Walker and Slowik

In her first and second claims of error, Plaintiff argues that the ALJ should not have given great weight to the state agency reviewer's opinion as to psychological limitations and that the ALJ also failed properly to weigh and analyze the consultative examiner's opinion.  She supports that argument by noting that the state agency reviewer, Dr. Walker, did not examine or treat Plaintiff and that the opinion fails to explain how its conclusions were reached.  She also contends that it is not consistent with the bulk of the medical evidence and inconsistent with Dr. Slowik's consultative examination as well, thus rendering the ALJ's reliance on it unreasonable.  As to Dr. Slowik, she faults the ALJ for cherry-picking the record when discussing his views and for failing to perform a thorough analysis of the factors which must be considered in determining how much weight to give to opinion evidence.   The Commissioner counters that it was within the ALJ's discretion to decide how much weight to give to each opinion and that the ALJ's weighing of these opinions was consistent with the other evidence of record.

The ALJ's reasoning concerning the opinion evidence can be summarized in this way.  She first determined that Plaintiff's statements regarding the intensity and severity of her symptoms were not supported by the record - a conclusion which Plaintiff has not challenged in her motion.  That conclusion was buttressed by the fact that Plaintiff's presenting symptoms varied over time and with treatment and that she consistently failed to follow through with prescribed medications.  The ALJ also noted that her activities of daily living, including riding a bicycle for transportation, engaging in self-care, shopping for groceries, gardening, swimming,

dog walking, visiting family members, and working sporadically were inconsistent with disabling psychological symptoms.  (Tr. 18).

The ALJ then turned to Dr. Walker's opinion.  It was given "great weight" because Dr. Walker was familiar with the agency disability program rules and had reviewed the available records.  The ALJ also commented that this opinion was "well-explained and [made] specific reference to the claimant's medical records and history" and that after-obtained evidence did "not significantly contradict the opinion."  (Tr. 19).  As to Dr. Slowik's opinion, the ALJ gave it only partial weight, reasoning that, on the positive side, it was from a specialist and was supported by Plaintiff's medical history, but, on the negative side, it did not reflect the extent to which Plaintiff had been treated for substance abuse, and it was not fully consistent with Plaintiff's reported level of functioning.  *Id*.  After due consideration, the Court finds that Plaintiff's arguments against these conclusions are not well-taken.

The key to evaluating any opinion evidence is its consistency with the record (although other factors, such as the existence of a treating relationship and the supportability of the opinion, along with the extent to which the opinion is rendered by a specialist familiar with the rules of the Social Security Administration, may also be considered, *see* 20 C.F.R. §416.927(c)).  As this Court has said,

> "[a]n ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability." [citation omitted]. "Although an examining source is 'generally' afforded more weight than a non-examining source, an ALJ is allowed to afford a non-examining source more weight than an examining one." *Christy v. Comm'r of Soc. Sec.*, 2015 WL 6160165, at *9, 2015 U.S. Dist. LEXIS 142331, at *20-21 (N.D.N.Y. Sept. 24, 2015), *adopted*, 2015 U.S. Dist. LEXIS 142228 (N.D.N.Y. Oct. 20, 2015). For example, an ALJ may assign greater weight to the opinion of a non-examining source when it is better supported by the record. *See Ridosh v. Berryhill*, No. 16-CV-6466L, 2018 WL 6171713, at *6, 2018 U.S. Dist. LEXIS 199661 at *17 (W.D.N.Y. Nov. 26, 2018) ("a non-examining physician opinion may be entitled to more weight than the opinion of an examining physician ... such as where the opinion of a treating or examining physician is contradicted by substantial evidence in the record.") (citation omitted); *Florez v. Apfel*, No. CV 97-3052, 1998 WL 760334, at *7, 1998 U.S. Dist. LEXIS 16264, at *18 (E.D.N.Y. Aug. 31, 1998) ("Given that [the medical expert's] opinions are supported by the record, and [the treating physician's] opinion that the [claimant] was disabled is not, the ALJ was free to find the non-examining expert's testimony persuasive.").

*Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 335 (W.D.N.Y. 2018).

Here, the ALJ accurately noted that Plaintiff's treatment history showed a consistent

pattern. She sought counseling; she was terminated for non-compliance. She followed a prescribed regimen of medication; she stopped taking it. She denied abusing substances; she relapsed. She went through substance abuse treatment; she did so again after relapsing. Her mood, affect, attention, concentration, and activities of daily living varied depending in large part on her compliance with treatment. When she was in treatment, she improved, her anxiety and depression decreased, and she actively sought or even obtained temporary employment. At the time Dr. Slowik saw her, she had not consistently been in treatment, and her opinion may have been affected by that circumstance. It was not unreasonable for the ALJ to conclude, on this record, that Dr. Wright's opinion - based on a review of the entirety of the medical record up to that point, and consistent with the subsequent set of records, as summarized above - was entitled to be given more weight than Dr. Slowik's.

Plaintiff argues that there are many indications in the record of symptoms which show that she is unable to function as indicated by Dr. Wright and as found by the ALJ. But the ALJ was not required to credit that evidence over the contrary indications in the record. An ALJ may make reasonable choices when determining which parts of the record to rely on. *See, e.g., Stover v. Saul*, 2020 WL 897411, *2 (W.D.N.Y. Feb. 25, 2020), (" '[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts,'" *quoting Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). It also is worth noting that the ALJ adopted almost all of the functional restrictions found in Dr. Slowik's opinion, limiting Plaintiff to simple tasks and accounting for moderate (but not marked) impairments in maintaining a schedule, relating to others, and dealing with work stress. The Court therefore concludes that the ALJ acted reasonably in the weight she assigned to each of these opinions and that she applied the appropriate factors in her evaluation of them.

In her reply, Plaintiff also argues that the residual functional capacity finding made by the ALJ does not exactly track either expert opinion with respect to psychologically-based limitations. Although in some cases this can be grounds for reversal, it does not support that remedy in every such case. As this Court has said, "the applicable rule is that 'in a case such as this, the ALJ, while entitled to disagree with the medical opinions, can do so only for reasons which have a sound basis in the record itself.'" *Starcher v. Comm'r of Soc. Sec.*, 2020 WL 6737403, at *4 (W.D.N.Y. Nov. 16, 2020). But if those reasons exist, the residual functional capacity finding may differ from the experts' opinions without violating the substantial evidence standard. *See also Riley v. Comm'r of Soc. Sec.*, 2019 WL 5287957, at *4 (W.D.N.Y. Oct. 17, 2019). That is the case here, and the Court consequently finds no merit in Plaintiff's first two claims of error.

### B. Limitations on Work Pace and Attendance

As her third claim of error, Plaintiff argues that the ALJ did not take her limitations in work pace and attendance into account when she fashioned the residual functional capacity finding. Plaintiff cites to various portions of the record which, in her view, demonstrate that she experienced psychological symptoms which would affect her ability to maintain a regular

schedule, and such a failure would preclude her from performing any work.  She combines this claim with the assertion that because these limitations were not properly accounted for, the ALJ should not have relied on the vocational expert's testimony because it was given in response to a flawed hypothetical question concerning Plaintiff's work-related ability.

The straightforward answer to this argument is, again, the fact that Plaintiff and the ALJ disagree over what evidence deserved the most weight.  Certainly, one reading of the record is that Plaintiff would experience issues with regular work attendance.  But that is not the only permissible reading.  The ALJ resolved the conflicts concerning this issue in a reasonable fashion and, as the Court has found, relied on expert opinions that Plaintiff was capable of performing the psychological demands of work on a sustained basis even with her various psychological limitations.  Under these circumstances, the mere presence in the record of some amount of contradictory evidence does not permit the Court to second-guess the ALJ's determination.

## V.  CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 9) **GRANTS** the Commissioner's motion (Doc. 13), and directs the Clerk to enter judgment in favor of the defendant.

/s/ **Terence P. Kemp**
**United States Magistrate Judge**